IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and CHARLES A. WHOBREY, as Trustee,<br><br>    *Plaintiffs*,<br><br>v.<br><br>EVENT PRODUCTIONS, INC., An Illinois corporation,<br><br>    *Defendant*. | No. 21 C 5695<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and its trustee Charles A. Whobrey ("Central States" or the "Pension Fund") seek collection of withdrawal liability from Defendant Event Productions, Inc., under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1001 *et seq.* (Dkt. 37). Event Productions seeks attorney's fees and costs for bringing a successful motion for sanctions against Central States. (Dkts. 35, 36). Event Productions also moves to dismiss Central States' Amended Complaint. (Dkt. 50). For the following reasons, the Court denies Event Productions' Motion to Dismiss. (*Id.*) The Court further orders Central States to pay Event Productions $49,262.50 in reasonable attorney's fees, pursuant to its Order of August 30, 2022. (Dkt. 36). Payment of sanctions order, however, is deferred until the close of this case. (*Id.*)

1

**BACKGROUND**

**I.    Procedural History**

Central States is a multiemployer pension plan. In October 2021, Central States sued Event Productions for withdrawal liability under section 4203 of ERISA, 29 U.S.C. § 1383.[1] (Dkt. 1). The Complaint alleged:

> During relevant times, Event Productions was bound by collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters, under which Event Productions was required to contribute to the Pension Fund on behalf of certain of its employees.

(Dkt. 1 ¶ 9). Event Productions denied the allegation. (Dkt. 14 at 3 ¶ 9). In fact, it denied ever entering into *any* contract requiring contributions to the Pension Fund. (*Id.* at 5–6 ¶ 1).

In response to this denial, counsel for Central States produced a collective bargaining agreement (CBA) signed by "Event Productions, Inc." and its representative, "Denis Egan, Pres." One problem: this CBA was executed by a *different* "Event Productions, Inc."—one based in California. Defendant Event Productions, Inc., in this case is an Illinois corporation. They are completely unrelated entities. (*See* dkt. 35 at 2).

Event Productions moved for sanctions against Central States under Federal Rule of Civil Procedure 11(b)(3). (Dkt. 20). This Court granted the motion, finding it troubling that Central States had refused to amend its Complaint even after being notified that the CBA on which it had purportedly based its allegations in paragraph 9 was signed by another entity than the defendant here. (Dkt. 35 at 3). The initial Complaint was inconsistent with Central States' post hoc rationale that it had always meant to allege that Event Productions was generally "bound by" some other CBA than the one Central States initially furnished. (*Id.*)

---

[1] "For purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer—(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

2

This Court ordered Event Productions to submit a petition to recover reasonable attorneys' fees and costs for bringing the Rule 11 motion. (*Id.*) That petition is now before the Court. (Dkt. 36). The Court also directed Central States to file an Amended Complaint that identifies "which CBAs they allege Event Productions is 'bound by.'" (Dkt. 35 at 3). Central States filed its Amended Complaint on September 13, 2022. (Dkt. 37).

**II.     Amended Complaint**

Central States now alleges that Event Productions was obligated to contribute to the Pension Fund under two master tradeshow CBAs—one made with Local Union No. 714, affiliated with the International Brotherhood of Teamsters, covering January 1, 2004 through December 31, 2008—and a second made with the Teamsters' Local Union No. 727, covering January 1, 2009 and remaining in force after December 31, 2013. (Dkt. 37 ¶¶ 9–10). Central States attached the two master tradeshow CBAs. (Dkts. 37-2, 37-3). Neither was signed by Event Productions. (*See* dkts. 37-2, 37-3; *see also* dkt. 37 ¶ 11).

The master tradeshow CBAs require employers to contribute to the Pension Fund on behalf of union employees at specific rates for hours worked. (Dkt. 37 ¶ 11). From 2004 through 2017, Event Productions reported Local 714 and Local 727 members' hours worked to the Pension Fund. (*Id.* ¶ 14). It paid contributions on these employees' behalf at the precise hourly rates (including annual increases) required by the master tradeshow CBAs. (*Id.* ¶¶ 14–19, 23). Spreadsheets reporting union members' hours worked and sent to the Pension Fund identified Event Productions as their employer and listed its federal employer identification number. (*Id.* ¶ 23). From 2004 through 2017, Event Productions cumulatively reported and paid contributions for 8,591.50 hours worked by these union members. (*Id.* ¶ 20). In total, Event Productions reported work history and

paid contributions on behalf of at least 175 employees, at least 22 of whom are currently collecting benefits from the Pension Fund. (*Id.* ¶ 21).

On November 17, 2005, Central States stated in a letter to Event Productions that it had previously requested that Local 714 and Event Productions "submit a signed collective bargaining agreement and Participation Agreement" to the Pension Fund, but that it not yet received these documents. (*Id.* ¶ 22). The letter further stated,

> Although we still would like you to submit signed documentation, based upon your actions and submitting the pension contributions, you have acknowledged your obligations under this collective bargaining agreement. Therefore, we have updated the account for Event Productions to show the rates and benefits currently in effect for employers that are using Tradeshow Industry/Theatrical Teamsters that have been referred by Local 714.

(*Id.*) Event Productions did not respond but continued making payments and reporting work history to Central States. (*Id.*) Additionally, Central States has twice assessed—and Event Productions has twice paid in full, without dispute—partial withdrawal liability, once in 2009 and again in 2010. (*Id.* ¶ 25).

Event Productions has also referred in writing to its participation in the Pension Fund. Its owner and president Elaine Roombos stated in a letter dated September 5, 2017, that "Event Productions . . . has not withdrawn from the Central State[s] Pension Fund." (*Id.* ¶ 24). She stated by letter dated February 12, 2019, that, given anticipated future work, Event Productions would "like to keep the account open" with the Pension Fund. (*Id.*)

These expressions from Event Productions' president notwithstanding, Central States determined that on or about November 26, 2017, Event Productions effected a "complete withdrawal" from the pension fund. 29 U.S.C. § 1383. (Dkt. 37 ¶ 26). Central States calculated that Event Productions owed withdrawal liability of $255,375.24. (*Id.* ¶ 27). It sent Event Productions a notice and demand for payment of the withdrawal liability. (*Id.* ¶ 28). When no

4

response came, Central States followed up with a past-due notice. (*Id.* ¶ 29). Event Productions failed to make withdrawal liability payments or to initiate arbitration. (*Id.* ¶¶ 30–31).

After prevailing on its motion for sanctions on the unsupported allegations in Central States' initial Complaint, Event Productions now moves to dismiss the Amended Complaint for failure to state a claim. (Dkt. 50).

### Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and "draw[s] all reasonable inferences in the [plaintiff's] favor." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). The Court "also consider[s] any documents attached to and integral to the complaint as part of the [plaintiff's] allegations." *Id.* The complaint's "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), must offer more than "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, to survive a defendant's motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### Discussion

**I.    Motion to Dismiss**

"Although many pension plans cover only the employees of one employer, in some industries multi-employer plans are common. But participating employers may come and go, and when a firm withdraws from the plan, there is a risk that the plan will be underfunded." *Local 705 Int'l Bhd. of Teamsters Pension Fund v. Pitello*, 3 F.4th 949, 950 (7th Cir. 2021). Congress passed the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) to mitigate that risk "by

5

requiring withdrawing employers to pay a sum that covers their liability for unfunded vested benefits attributable to their employees." *Id.*; *see* 29 U.S.C. §§ 1381(a), 1404(a) (defining "withdrawal liability"). Under ERISA as amended by the MPPAA, an employer who completely withdraws from a multiemployer pension plan must pay withdrawal liability. 29 U.S.C. § 1383.

A multiemployer pension plan seeking to collect withdrawal liability from a withdrawing employer must show that: "(1) the Fund was a multiemployer pension plan and the Defendant[ ] [was] an employer for the purposes of ERISA, (2) the Fund notified the Defendant[ ] of [its] assessed liability, and (3) Defendant[ ] failed to timely initiate arbitration." *Chi. Truck Drivers v. El Paso Co.*, 525 F.3d 591, 597 (7th Cir. 2008) (cleaned up and internal citations omitted). Here, Event Productions moves to dismiss Central States' claim for withdrawal liability because it was never an "employer" under the MPPAA. Central States contends that Event Productions waived this and any other defense because it failed to timely initiate arbitration of its assessed liability under the MPPAA's mandatory arbitration provision. Before examining whether Event Productions was an employer under the MPPAA, then, the Court must address the question of whether Event Productions was required to raise this issue in arbitration.

### A. Waiver for Failure to Arbitrate

Once a multiemployer pension fund determines that an employer owes withdrawal liability, the fund sends the employer a notice and demand for payment. 29 U.S.C. § 1399(b)(1); *Cent. States, Se. & Sw. Area Pension Funds v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992). To challenge the fund's withdrawal-liability assessment, the employer must timely request a review by the fund. 29 U.S.C. § 1399(b)(2)(A); *Slotky*, 956 F.2d at 1371. If the employer disagrees with the results of the review, then it must timely initiate arbitration. *Transpersonnel, Inc. v. Roadway Exp., Inc.*, 422 F.3d 456, 459 n.1 (7th Cir. 2005) (citing 29 U.S.C. § 1401(a)(1) ("Any dispute between an

employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1391 through 1399 of this title shall by resolved through arbitration.")); *see also Slotky*, 956 F.2d at 1371–72. Failure to timely initiate arbitration "has a simple and adverse consequence—withdrawal is conclusively established and the amount demanded by the pension fund becomes due and owing." *Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 848 (7th Cir. 2015) (citing 29 U.S.C. § 1401(b)(1)). This harsh result "effectuates Congress's intent to ensure the stability of pension funds." *Id.* (citing *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988)).

Whether a company is an "employer" under the MPPAA, however, is a threshold question for the Court. *Transpersonnel, Inc.*, 422 F.3d at 459 n.1 (citing *Banner Indus. v. Cent. States Pension Fund*, 875 F.2d 1285, 1293 (7th Cir. 1989). "Since only an 'employer' is required to arbitrate, the district court may address this threshold question before arbitration." *Id.* (citing *Mason & Dixon Tank Lines, Inc. v. Cent. States Pension Fund*, 852 F.2d 156, 167 (6th Cir. 1988)). Here, then, whether Event Productions is an "employer" within the meaning of the MPPAA is a threshold question for the Court and need not be raised in arbitration. This makes sense. If Event Productions is not an employer under the MPPAA, then it falls entirely outside the statute's ambit, including the mandatory arbitration provision. *See Transpersonnel, Inc.*, 422 F.3d at 459 n.1; *see also Rheem Mfg. Co. v. Cent. States Se. & Sw. Pension Fund*, 63 F.3d 703, 705–06 (8th Cir. 1995) (plaintiff properly sought declaratory judgment of its employer status under MPPAA rather than initiate arbitration); *cf. Banner Indus. v. Cent. States Se. & Sw. Areas Pension Fund*, 875 F.2d 1285, 1293 (7th Cir. 1989) (distinguishing between a putative employer's "continued employer status," which is arbitrable, and the question of its employer status in the first instance, which "legitimately challenged application of the MPPAA dispute resolution process to them").

Central States relies primarily on *Central States, Southeast and Southwest Areas Pension Funds v. Slotky* to argue that Event Productions was required to arbitrate its employer status. But that case concerned the MPPAA's provision for a business under the "common control" of an employer, and whether notice to one employer constituted notice to all under common control.[2] Slotky—who challenged his employer status—had become sole shareholder of Stevens Bedding, an entity whose employer status under the MPPAA was never in question. *Slotky*, 956 F.2d at 1372. The statute's arbitration requirement "presupposes a determination that the dispute is with an 'employer.'" *Id.* Stevens Bedding was an employer, so the question of whether Slotky could also be considered an employer of a business under common control with Stevens Bedding was arbitrable. *Id.* at 1372–73. The Seventh Circuit affirmed the district court's determination that Slotky had waived his defense on the common-control question by failing to initiate arbitration when he had ample notice of his status as a potential employer under the MPPAA. *Id.*

By contrast, Event Productions challenges Central States' premise that an employer within the MPPAA's meaning exists here in the first place. In *Slotky*, that threshold question had already been answered. But here, the Court must determine whether Event Productions has ever been an employer under the MPPAA. *See Transpersonnel*, 422 F.3d at 459 n.1; *Banner Indus.*, 875 F.2d at 1293.

Central States objects to *Transpersonnel*'s applicability to this case. Central States points out that the pension fund was not a party to that case, so the statute's mandatory arbitration provision was not at issue. Transpersonnel sought a declaratory judgment that the defendant

---

[2] "Withdrawal liability applies to the withdrawing employer, but it also applies to 'all trades or businesses (whether or not incorporated) that are under common control' with that employer." *Pitello*, 3 F.4th at 950 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 894 (7th Cir. 2001); 29 U.S.C. § 1301(b)(1)). The MPPAA defines "common control" according to the regulations promulgated under § 414(c) of the Internal Revenue Code. *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 880 (7th Cir. 2011); 29 U.S.C. § 1301(b)(1). Trades and businesses may be commonly controlled in three ways: a parent-subsidiary group, a brother-sister group, or a "combined" group of the former two. *SCOFBP, LLC*, 668 F.3d at 880; 26 C.F.R. § 1.414(c)–2(a).

Roadway Express was the true employer—for MPPAA purposes—of workers leased out in an agreement between the parties. 422 F.3d at 458. The pension fund separately sought to collect withdrawal liability from Transpersonnel, which had initiated arbitration but sought its declaratory judgment before arbitration proceeded. *Id.* But the pension fund was a party to cases that *Transpersonnel* cited for its proposition that employer status under the MPPAA is a threshold issue properly before the district court. *See Rheem Mfg. Co.*, 63 F.3d at 705–06; *Banner Indus.*, 875 F.2d at 1293. *Transpersonnel* merely reaffirmed the holdings in those cases. 422 F.3d at 459 n.1.

Central States also contends that *Transpersonnel* only permits a court to address this threshold question "prior to" arbitration already underway, but this conclusion makes little sense. There is no reason the procedural posture of that case precludes the Court from addressing the same question after the timeframe for initiating arbitration has expired. The only difference is that here, Event Productions has taken no affirmative steps to preserve other potential arbitrable defenses before the arbitration timeframe expired. *Cf. Banner Indus.*, 875 F.2d at 1293–94 (affirming district court's equitable tolling of statutory arbitration timeframe to employer challenging its employer status when employer filed declaratory-judgment action prior to its expiration). This may have consequences for Event Productions later in the litigation but is irrelevant to the question at hand.

Event Productions has not waived its challenge to its employer status under the MPPAA by failing to arbitrate this question according to that statute's mandatory arbitration provisions. The issue is properly before the Court.

**B. Event Production's Employer Status Under the MPPAA**

The MPPAA "consists of a series of amendments to ERISA aimed at minimizing 'the adverse consequences that resulted when individual employers terminate[d] their participation in,

or withdr[e]w from, multiemployer plans.'" *Tsareff*, 794 F.3d at 845 (quoting *Pension Benefit Guarantee Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 (1984)). It requires an employer that withdraws from a multiemployer plan to pay withdrawal liability. *Id.*; 29 U.S.C. § 1381(a). The statute does not define the term, but under well-established Seventh Circuit caselaw, an "employer" under the MPPAA is "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Transpersonnel, Inc.*, 422 F.3d at 460 (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transport, Inc.*, 85 F.3d 1282, 1287 (7th Cir. 1996)). The obligation to contribute is contractual. *Id.* (citing *Cent. Transport*, 85 F.3d at 1287). Accordingly, an "'employer' for purposes of MPPAA liability is an entity that has assumed a contractual obligation to make contributions to a pension fund." *Id.*

Multiemployer pension funds typically receive contributions from employers pursuant to contracts—i.e., collective bargaining agreements (CBAs)—between employers and unions. *See Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 577 (7th Cir. 2010). A CBA need not be reduced to writing to create contractual obligations—"[a]ll that is required is conduct manifesting an intention to abide and be bound by certain terms." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 500 n.2 (7th Cir. 1996); *see also Line Constr. Benefit Fund*, 591 F.3d at 580 (assent to CBA may be found through conduct consistent with the agreement, even without a signature). But the contractual obligation to contribute to a multiemployer pension fund arises exclusively pursuant to a "written agreement" between an employer and a union. 29 U.S.C. § 186(c)(5)(B)[3]; *Moriarty v. Larry G. Lewis Funeral Dirs. Ltd.*, 150 F.3d 773, 775 (7th Cir. 1998); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148,

---

[3] "[W]ith respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer . . . *Provided,* That . . . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer . . . ."

10

1153–54 (7th Cir. 1989) ("No employer may agree with a union to contribute to a pension plan without a 'written agreement' under § 302(c)(5)(B) of the National Labor Relations Act, 29 U.S.C. § 186(c)(5)(B)."); *Line Constr. Benefit Fund*, 591 F.3d at 581 ("[E]mployers may not make payments to employee benefit funds unless those contributions are specified in a written agreement."). Critically, "[a]s long as the agreement is written, it does not have to be a 'signed, unexpired collective bargaining agreement between the parties,' or even a signed agreement at all." *Line Constr. Benefit Fund*, 591 F.3d at 581.

Here, Event Productions contends that Central States has failed—at the motion-to-dismiss stage—to produce Event Productions' signature to any written CBA executed between Event Productions and Local 714 or Local 727 obligating it to contribute to the Pension Fund. Only by plausibly alleging that it is a signatory to such a written contract, Event Productions argues, can Central States survive a motion to dismiss. Otherwise, Event Productions was never contractually obligated to contribute to the Pension Fund. Therefore, it is not an employer under the MPPAA, so Central States cannot now assess withdrawal liability against it.

But the Amended Complaint alleges that written agreements *do* exist—the master tradeshow CBAs. These agreements specify the terms by which employers were obligated to contribute to the Pension Fund on behalf of union workers. Central States also alleged that Event Productions made contributions that conformed precisely to the master tradeshow CBAs' requirements. It made these contributions over 14 years on behalf of dozens of workers. In short, the master tradeshow CBAs constitute written agreements obligating employer contributions to the Pension Fund, and Event Productions manifested assent to these CBAs by its conduct. Central States concedes that it does not currently have proof that Event Productions ever signed a master tradeshow CBA with either union. But at the motion-to-dismiss stage, Central States has alleged

11

plausible facts showing Event Productions' contractual obligation to the master tradeshow CBAs. *See Line Constr. Benefit Fund*, 591 F.3d at 580.

*Line Construction Benefit Fund v. Allied Electrical Contractors* instructs the outcome here. In that case, the employer was not an original signatory to a 2005 CBA negotiated between a national electrician's professional association (NECA)—of which the defendant Allied Electrical Contractors was a member employer—and the union. 591 F.3d at 578. The 2005 CBA obligated employers to contribute to a multiemployer pension plan. *Id.* Allied did not execute a formal letter of consent to the 2005 CBA until December 2006. *Id.* Nevertheless, Allied made pension contributions in accordance with the hourly rates specified by the 2005 CBA since its inception. *Id.* Allied missed payments in late 2006, before executing the consent letter, as well as in early 2007, after the consent letter. *Id.* The pension fund sought payment of the delinquent contributions. *Id.* Allied claimed it was not contractually bound by the CBA to contribute to the pension fund until it had formally adopted the CBA in writing. *Id.*

The Seventh Circuit disagreed, holding that Allied had assented to the CBA by its conduct making payments in accordance with its terms even without signing the agreement or executing a consent letter. *Id.* at 580–81. Although the CBA itself explicitly required a letter of consent from participating employers, the Seventh Circuit emphasized that it does not take a formalistic approach to contract formation in the ERISA context. *Id.* at 581. Rather, "conduct manifesting assent creates an obligation [to a CBA]; a contrary rule would ignore commercial realities and would create a loophole for parties seeking to escape responsibilities that they have acknowledged through their behavior." *Id.* Allied had not formally signed on to the 2005 CBA, but the Seventh Circuit found that document nevertheless satisfied the statutory requirement of a "written

12

agreement" obligating pension-fund contributions, when considered with Allied's conduct manifesting consent to be bound by the agreement between NECA and the union. *Id.*

The same is true here. Event Productions paid pension contributions to Central States for 14 years at the rates required by the master tradeshow CBAs for Local 714 and Local 727 workers. Further, it twice paid prior partial withdrawal-liability assessments. If Event Productions was never obligated to contribute to the Pension Fund, then it is odd to object only now to its purported employer status. Such a claim might have been made twice before on the same basis. Event Productions also acknowledged in writing an account with the Pension Fund and an intention to maintain it. Indeed, if Event Productions never intended to be bound by these master tradeshow CBAs, then there is no plausible explanation for its conduct for over a decade. Moreover, it would be improper to contribute to the pension fund *without* a written agreement to do so. *See Line Constr. Benefit Fund*, 591 F.3d at 581 (noting that, if the Court had accepted the defendant-employer's argument that it was not contractually obligated to make pension contributions, then those it had made "would have been improper").

Under these circumstances, Central States has plausibly alleged that Event Productions by its conduct assented to be bound by the terms of the master tradeshow CBAs. Its claim that Event Productions is an employer under the MPPAA and incurred withdrawal liability under section 4201(b) of ERISA survives the motion to dismiss.[4]

---

[4] Event Productions also suggests that the Amended Complaint should be dismissed for failure to join the union as a necessary party under Rule 12(b)(7). (Dkt. 51 at 10 n.3). But Event Productions mischaracterizes Central States' action to collect withdrawal liability as an action that "seek[s] to enforce supposed contracts between [Event Productions] and local unions, making those local unions necessary parties under Rule 19." (*Id.*) Apart from being perfunctory and underdeveloped and thus arguably forfeited, *see Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020), this argument is also off base. Central States does not seek enforcement of an agreement between private parties. It seeks to collect pension fund contributions owed under the MPPAA. The MPPAA effectuates Congress's policy by allowing multiemployer pension funds to collect pension contributions directly from employers. *See Tsareff*, 794 F.3d at 845–46 ("By enacting provisions that hold withdrawing employers liable for their share of their plan's unfunded vested pension benefits, Congress evinced a desire to (1) 'relieve the financial burden placed upon remaining contributors to a multiemployer fund when one or more of them withdraws from the plan,' (2) 'avoid creating severe

**II.     Fee Petition**

Following this Court's Order of August 30, 2022, Event Productions submitted a petition for the reasonable attorney's fees and costs associated with bringing a successful motion for sanctions against Central States under Rule 11. (Dkt. 36). In calculating a reasonable fee award, courts first calculate a "lodestar" amount by multiplying the attorneys' hours on the case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, p. 1 (1976)); *see also Divane v. Krull Elec. Co.*, 319 F.3d 307, 317–18 (7th Cir. 2003) (applying *Hensley* in context of Rule 11 fee award). "The reasonable hourly rate (or 'market rate') for lodestar purposes is the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) (internal citation omitted). An attorney's hourly rate is presumptively reasonable where it is consistent with what he charges other clients for similar work. *Jeffboat, LLC v. Dir., Off. of Workers' Compensation Programs*, 553 F.3d 487, 489–90 (7th Cir. 2009); *see also Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) ("Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it *is* market value.").

Event Productions seeks $49,262.50 in fees incurred in connection with bringing its Rule 11 motion. (Dkt. 36 at 2–4). It calculated this fee award by multiplying 57.5 attorney hours by the respective hourly rates billed by the two attorneys—40.5 hours x $975 per hour = $39,487.50, plus 17.0 hours x $575 per hour = $9,775.00. (*Id.*; *see also* dkt. 36-2). The Court has reviewed the hours that counsel reported to have spent preparing and bringing the Motion and finds them reasonable.

---

disincentive to new employers entering the plan,' and (3) 'prevent the creation of funding deficiencies.'" (internal citations omitted)). Effecting complete relief here does not require the union to be joined.

Central States objects to the fee calculation on many grounds, though primarily on the attorneys' hourly rates. First, it argues that the billing rates for both attorneys are unreasonable because this matter (or at least 33.5 hours of it) should have been staffed by lower-paid associates. (Dkt. 44 at 2–4). Second, it argues that attorney Greg Shinall's billing rate was unreasonably high because he lacks experience in ERISA, the MPPAA, labor law, and employee benefits. (*Id.* at 4–5). Third, it objects that certain entries reflect improper "double-billing" because the two attorneys conferred together and both billed for their time. (*Id.* at 5–7). Fourth, it contends that Event Productions has not appropriately supported the asserted payment of its invoices. (*Id.* at 7–8). Fifth, it suggests that the hourly rates of Central States' counsel or his supervisor would reflect a more "reasonable" rate for attorney hours on a case such as this. (*Id.* at 8–9). Finally, it argues that the Court should defer an order to pay fees until the conclusion of this case. (*Id.* at 9–10).

The Court finds no reason to disturb the presumptive reasonableness of Mr. Shinall's or Mr. Scheetz's hourly rates. As their invoice to Event Productions shows, these are the rates the two attorneys—both partners in their firm with significant litigation experience—have charged for other work in this litigation. The hours were incurred before the Court ruled on the Motion for Sanctions, so there is no evidence that counsel ran up hours at higher rates knowing payoff by Central States was guaranteed. Event Productions retained counsel at these rates, and the billing records are consistent. It is neither necessary nor appropriate to substitute Central States' own counsel's hourly rate for that of the attorneys Event Productions willingly retained for this litigation. Nor will the Court reduce the attorneys' hourly rates merely because Central States' counsel believes they should have more demonstrated experience in ERISA and labor law. Event Productions chose counsel knowing their experience and their billing rates; this sufficiently

15

demonstrates the market rate for comparable legal work. *See Jeffboat, LLC*, 553 F.3d at 489–90; *Balcor Real Estate Holdings, Inc.*, 73 F.3d at 153.

Likewise, the Court declines Central States' invitation to apply "associate-level" billing rates to 33.5 hours of work that Central States maintains should have been performed by associates rather than partners. There is no showing that associates were involved in this case at the relevant times, unlike in the cases that Central States cited. *See Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1246–47 (N.D. Ill. 1993) (finding extraordinary that reported partner hours (13,317.80) exceeded associate hours (10,832.85) in large class action and finding hours expended by partners excessive); *Abrams v. Van Kampen Funds, Inc.*, 2006 WL 163023, at *8 (N.D. Ill. Jan. 19, 2006) (finding that two-thirds of hours were billed by partners, which was inappropriate in large class action staffed by partners, associates, and paralegals). The two partners were already working on this case, and no associates were "up to speed." Moreover, Central States' reference to the "market practice" of delegating legal research, drafting filings, and reviewing documents to associates is irrelevant where the client has agreed to pay the attorney's rates before being assured of the results.

Next, the 2.5 hours of time that Mr. Shinall and Mr. Scheetz each billed were reasonable, as they conferred together. Central States complains that these hours are "double billed" but does not dispute that the 2.5 attorney hours spent on this conferral were reasonable. Indeed, Central States previously argued that partners "are paid high rates to develop case strategy, [and to] provide high-level analysis." (Dkt. 44 at 4). It is reasonable for attorneys to confer together on case strategy, and Central States cites no cases where a court found that only one attorney and not the other can justifiably bill for the time each spent working cooperatively.

In sum, the Court agrees with Event Productions that its fee petition represents the lodestar calculation of the attorney's hours spent on bringing the Motion for Sanctions multiplied by counsel's reasonable hourly rates of. The attorney's fees come to $49,262.50. (Dkt. 36). That said, the Court will delay imposition of the fee award until the case has concluded. Although Central States failed to conduct a sufficient pre-suit investigation to support the factual allegations of its initial Complaint, the Amended Complaint states a plausible claim for relief.

Finally, Event Productions requested in its reply brief that the Court consider awarding "fees on fees" as a component of its Rule 11 sanction. (Dkt. 49 at 7–8). While it is in the remedial scope of Rule 11 to award fees in connection with preparing the fee petition, the Court finds that the fees already awarded sufficiently sanction Central States for its violations and deters future misconduct. The Court declines to award fees on fees.

## Conclusion

The Court denies Event Productions' Motion to Dismiss. [50] The Court further awards Event Productions $49,262.50 in reasonable attorney's fees and costs associated with bringing its successful Motion for Sanctions under Rule 11. [36] The Court will delay imposition of the fee award until the case has concluded.

_____
Virginia M. Kendall
United States District Judge

Date: June 1, 2023